UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

605 FIFTH PROPERTY OWNER, LLC,

> *Plaintiff,*

- against -

ABASIC, S.A. f/k/a ABASIC S.L.,

> *Defendant.*

Civil Action No.: 1:23-cv-136

**COMPLAINT WITHOUT
JURY DEMAND**

Plaintiff, 605 Fifth Property Owner, LLC, by and through its attorneys, Belkin Burden Goldman, LLP, as and for its Complaint against Abasic, S.A. f/k/a Abasic, S.L., alleges as follows:

### NATURE OF CLAIMS

1.      This action arises out of a breach of a certain commercial guaranty agreement dated as of January 17, 2020 (the "Guaranty"), made by Defendant, Abasic, S.A. f/k/a Abasic, S.L. ("Defendant"), in favor of Plaintiff, 605 Fifth Property Owner, LLC ("Plaintiff").   Pursuant to the Guaranty, Defendant guaranteed the obligations of its wholly-owned subsidiary, NTS W. USA Corp. ("Tenant"), under that certain commercial Store Lease dated as of January 17, 2020 (the "Lease"), between Plaintiff and Tenant.

2.      There were two prior actions commenced by Plaintiff against Defendant for breach of the Guaranty in the United States District Court for the Southern District of New York, as follows:

- 605 Fifth Property Owner, LLC v. Abasic, S.A., Case No. 21-cv-00811-DLC (the "First Action"), in which the court awarded Plaintiff judgment against Defendant for rent and additional rent arears owed under the Lease and Guaranty through December 31, 2021, in the amount of $2,637,543.92,

plus an award of legal fees in the amount of $183,296.27 (the "First Action Judgments"); and

- *605 Fifth Property Owner, LLC v. Abasic, S.A., Case No. 22-cv-04590-DLC* (the "Second Action"), in which the court awarded Plaintiff judgment against Defendant for rent and additional rent arears owed under the Lease and Guaranty through September 23, 2022, in the amount of $1,254,729.07, plus an award of legal fees in the amount of $53,163.27 (the "Second Action Judgments").

3.      This third action seeks monetary redress from Defendant for all base rent and additional rent (collectively, "Rent") that accrued subsequent to the rent and additional rent awarded to Plaintiff in the Second Action Judgments, which have presently become due under the Lease and Guaranty, but have not been paid by Tenant or Defendant from September 23, 2022 through the date of this action in the amount of $624,397.70, less the net rental proceeds allocable to the Premises (defined below) received by Plaintiff from a subsequent tenant (i.e., StreetTrend (defined below)) in mitigated damages, with Plaintiff reserving its rights to amend its pleadings to account for all Rent, attorneys' fees, and interest that accrue through the date of judgment in this action.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1), because the amounts in controversy exceed $75,000, exclusive of interest and costs, and the action is between citizens of different states.  Defendant has also expressly consented to this Court's jurisdiction over the subject matter pursuant to Section 14 of the Guaranty.

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district. Venue is also proper pursuant to Section 14 of the Guaranty, which provides that,

in any proceeding arising out of or in connection with the Guaranty, venue is proper in a federal court located in the State of New York.

## THE PARTIES

6.      At all relevant times set forth herein, Plaintiff was and is a New York limited liability company, authorized to conduct business in the State of New York, with an address at c/o Optimum Properties, 924 Bergen Avenue, Suite 513, Jersey City, New Jersey 07306, and subject to personal jurisdiction in the State of New York.

7.      Upon information and belief, at all relevant times set forth herein, Defendant was and is a company registered under the laws of the Kingdom of Spain with a registration number B63054068, and a registered office of Passeig Del Mare Nostrum 15, 08039, Barcelona, Spain.

## FACTS COMMON TO ALL CAUSES OF ACTION

8.      Plaintiff is the owner of the real property and building known as and located at 605 Fifth Avenue, New York, New York 10017 (the "Building").

9.      Tenant was the commercial tenant under the terms of the Lease for portions of the ground floor, cellar, second floor and second floor window of the Building (collectively, the "Premises"), until abandoning the Premises and obtaining bankruptcy court authorization to reject the Lease, effective as of September 4, 2020 (the "Lease Rejection Order"), in the bankruptcy proceeding filed by Tenant in the United States Bankruptcy Court for the Southern District of New York, under Case No. 20-35769 (CGM) (the "Bankruptcy Case"). Tenant is no longer in possession of the Premises.

10.     The term of the Lease was for three (3) years, and commenced on the date on which Landlord delivered possession of the Premises to NTS with all of the Delivery Conditions (as that term is defined in Section 1.01(S) of the Lease set forth below) satisfied, which the Lease provided

"is expected to be on or about May 1, 2020, and in no event earlier than April 1, 2020." *Id*. at §

1.01(O).

11.     The Delivery Conditions are set forth in Lease § 1.01(S), which provides as follows:

> "Delivery Conditions" shall mean the following, (i) that the Premises are
> vacant, with the current tenant's trade fixtures removed, and in boom-clean
> condition; (ii) that the storefront is in substantially the same (or better)
> condition in all material respects as on the date hereof; (iii) that the electric
> service and other utilities currently serving the Premises are in substantially
> the same (or better) condition in all material respects as on the date hereof;
> provided, however, that Tenant acknowledges that the current electrical
> service currently serving the Premises also serve the second (2nd) floor of
> the Building and shall be split by Landlord; (iv) that Landlord shall have
> delivered to Tenant an ACP-5 form (i.e., "Not an Asbestos Project
> Notification Form); and (v) any heating, ventilation and air-conditioning
> system servicing the Premises is in good working order and otherwise in
> "as-is" condition.

12.     Plaintiff delivered possession of the Premises to Tenant on April 1, 2020, after

satisfying all the Delivery Conditions prior to that date.

13.     The three-year Lease term therefore commenced on April 1, 2020 (the

"Commencement Date") and runs through and including March 31, 2023 (the "Expiration Date").

14.     As an inducement for the execution of the Lease by Plaintiff, Defendant executed

the Guaranty, pursuant to which Defendant unconditionally and irrevocably guaranteed to Plaintiff

Tenant's prompt and complete payment, observance, fulfillment and performance of all of

Tenant's obligations under the Lease, including without limitation Tenant's obligation to pay Rent

(as that term is defined in Section 1.01(FFF) of the Lease).

**THE RELEVANT PROVISIONS OF THE LEASE AND GUARANTY**

15.     Pursuant to various provisions of the Lease and Guaranty, Defendant has an absolute and unconditional obligation to pay to Plaintiff the base rent and additional rent due and owing under the terms of the Lease, without any offset, abatement or deduction whatsoever.

16.     Under the rent schedule set forth in Section 1.01(H) of the Lease (the "Rent Schedule"), Tenant was obligated to pay monthly base rent for the Premises in the amount of $116,666.67 per month for the period from April 1, 2020 through March 31, 2021, $120,166.67 per month for the period from April 1, 2021 through March 31, 2022 and $123,771.67 per month for the period from April 1, 2022 through March 31, 2023.

17.     In addition to base rent, Tenant was liable for certain operating expense payments, percentage rent, tax payments, administrative service charges, refunds of free rent, late charges, and attorneys' fees, billed as additional rental charges pursuant to Section 1.01(XX), Section 1.05(H), Section 3.01(A), Section 3.01(B), Section 3.02, Section 10.01, Section 10.02 and Section 10.25 of the Lease.

18.     Pursuant to Section 1.02(A) of the Lease, a portion of the second floor (the "Second Floor Premises") was to be included in the Premises unless, no later than March 1, 2020, Tenant elected to remove the Second Floor Premises from the Premises.

19.     Tenant did not provide Plaintiff with notice of its election to remove the Second Floor Premises from the Premises and, as such, pursuant to Section 1.01(XX) of the Lease, Tenant is liable for an amount equal to $2,500 per month for the period from April 1, 2020 through March 31, 2021, $2,575 per month for the period from April 1, 2021 through March 31, 2022, and $2,653 per month for the period from April 1, 2022 through March 31, 2023, for the Second Floor Premises.

20.     Pursuant to Section 3.02 of the Lease, Tenant was obligated to pay Tenant's Proportionate Share, which is defined under Section 1.01(XXX) of the Lease as seventy-five percent (75%), of certain building-wide expenses which are defined in the Lease as "Operating Expenses" and include all costs and expenses incurred by Landlord for elevator maintenance and repairs, and water charges and sewer rents for the Property.

21.     Pursuant to Section 1.05(H) of the Lease, Tenant was obligated to pay as additional rent an amount equal to fifteen percent (15%) of the monthly Base Rent during the period which it does not conduct business at the Premises, other than for a Temporary Cessation (as defined in the Lease):

> Without limiting anything contained in Section 4.02 and notwithstanding anything to the contrary, during any period that Tenant is not conducting business in the Premises (other than for a Temporary Cessation), Percentage Rent shall be payable to Landlord by Tenant during the period that Tenant is not conducting business in the Premises in an amount equal to fifteen percent (15%) of the Base Rent payable during such period.

22.     Pursuant to Section 10.01 of the Lease, in the event Tenant failed to timely pay any amounts owed by it under the Lease for five (5) days after respective due date Tenant was obligated to pay an administrative charge of five percent of the total overdue amount.

23.     Tenant acknowledged in the Lease that any failure by it to timely pay any of its obligations thereunder will result in and cause monetary loss to Landlord beyond the amount unpaid by Tenant, the exact amount of such costs being extremely difficult and impracticable to fix. Tenant further acknowledged in the Lease that such costs include, without limitation, processing and accounting charges and late charges that may be imposed on Plaintiff by the terms of any encumbrance covering the Premises. Therefore, in addition to any other rights and remedies provided Plaintiff, any and all payments, whether for rentals due or other charges, adjustments or

assessments, which remain unpaid for five (5) days after the respective due date, will be subject to an administrative service charge of five percent (5%) of the total overdue amount.

24.     Pursuant to Section 10.02 of the Lease, Tenant was also obligated to pay (in addition to the administrative charge) a late charge if Tenant failed to timely pay the amounts owed by it under the Lease:

> In addition to the administrative service charge described in Section 10.01 and all other rights and remedies provided Landlord, all amounts payable hereunder which remain unpaid for five (5) days after their respective due dates shall bear interest from the date that the same became due and payable to and including the date of payment, whether or not demand is made therefor, at the lesser of (i) the rate of eighteen percent (18%) per annum or (ii) the maximum legal interest rate allowed by the State of New York.

25.     Pursuant to Section 10.25 of the Lease, Tenant was obligated for pay for Landlord's attorneys' fees arising out of the enforcement of the provisions of the Lease, an event of default under the terms of the Lease, or any litigation, negotiation or transaction in which Tenant caused Plaintiff to be involved or concerned, regardless of whether or not a proceeding or suit is actually filed or commenced:

> Without limiting anything contained herein, Tenant shall reimburse Landlord for all reasonable fees, costs and expenses arising out of (i) Landlord's enforcement of this Lease, (ii) a default under this Lease by Tenant where Landlord places the enforcement thereof in the hands of an attorney (including, without limitation, for the collection of any Rent due or to become due or the recovery of possession of the Premises); or (iii) unless Tenant is the prevailing party, any litigation (including without limitation, court costs and the reasonable fees and disbursements of its attorneys in such action or proceeding (whether at the administrative, trial or appellate levels), negotiation or transaction in which Tenant caused Landlord to be involved or concerned, in either even regardless of whether or not a proceeding or suit is actually filed or commenced.

26.     Pursuant to the Section 2 of the Guaranty, Defendant unconditionally and irrevocably guaranteed Tenant's prompt and complete payment, observance, fulfillment, and performance of all of Tenant's obligations under the Lease.

27.     Defendant's liability under the Guaranty is primary and not secondary, and pursuant to Section 3 of the Guaranty, Defendant is liable for the full amount of all of the obligations of Tenant under the Lease, including any interest, costs, and fees (including Legal Costs (as defined in the Guaranty) payable by Tenant under the Lease, including any amounts which would have accrued under the Lease but for any insolvency proceeding.

28.     Pursuant to Section 5 of the Guaranty, Defendant's liability under the Guaranty is not affected, limited or terminated even if Tenant ceases to be liable under the Lease, whether by insolvency proceedings or otherwise, and Defendant waived the right to claim or raise or assert any defense, counterclaim, set-off or deduction against the obligations of Tenant under the Lease that would or might be available to Tenant, other than actual payment and performance of all of such obligations in full.

## THE PRIOR ACTIONS AND MONEY JUDGMENTS AGAINST DEFENDANT

29.     On or about January 29, 2021, Plaintiff commenced the First Action against Defendant seeking monetary damages for breach of the Guaranty.

30.     By Opinion an Order dated March 8, 2022, the Court in the First Action awarded Plaintiff summary judgment in the amount of $2,213,009.82 for base rent and additional rent owed under the Lease through January 21, 2022, plus interest.

31.     On or about April 8, 2022, the Court in the First Action entered judgment against Defendant in the total amount of $2,637,543.92, for damages related to the base rent, additional rent and interest owed to Plaintiff.

32.     By Opinion and Order dated April 27 2022, the Court in the First Action granted Plaintiff an award of attorneys' fees and disbursements in the amount of $183,296.27, and directed the Clerk of the Court to enter judgment accordingly.

33.     On or about April 27, 2022, the Clerk entered judgment in the First Action in the amount of $183,296.27 in attorneys' fees and disbursements and closed the case.

34.     On or about June 3, 2022, Plaintiff commenced the Second Action against Defendant seeking monetary damages for breach of the Guaranty for the period after January 21, 2022.

35.     By Opinion and Order dated November 8, 2022, the Court in the Second Action awarded Plaintiff summary judgment in the amount of $1,254,729.07 for base rent and additional rent owed under the Lease through September 22, 2022, plus interest.

36.     On or about November 30, 2022, the Court in the Second Action entered judgment against Defendant in the total amount of $1,254,729.07, for damages related to the base rent, additional rent and interest owed to Plaintiff.

37.     By Order dated December 8, 2022, the Court in the Second Action granted Plaintiff an award of attorneys' fees and disbursements in the amount of $53,163.27, and directed the Clerk of the Court to enter judgment accordingly.

38.     On or about December 8, 2022, the Clerk entered judgment in the Second Action in the amount of $53,163.27 in attorneys' fees and disbursements and closed the case.

## DEFENDANT'S CONTINUED BREACH OF THE GUARANTY AND LIABILITY FOR RENT AFTER SEPTEMBER 22, 2022

39.     Pursuant to the express terms and conditions of the Lease, Tenant agreed, throughout the term of the Lease, to timely pay to Plaintiff, on the first day of each month, the full

amount of the Rent due and owing under the Lease and, pursuant to the Guaranty, Defendant unconditionally and irrevocably guaranteed Tenant's prompt and complete payment, observance, fulfillment, and performance of such obligation as well as all of Tenant's other obligations under the Lease.

40.    In breach of Tenant's obligations under the Lease and Defendant's obligations under the Guaranty, Defendant has failed to tender to Plaintiff the Rent which have presently come due and owing under the Lease and Guaranty since September 23, 2022, and to date.

41.    Defendant has failed to pay and is therefore liable for the following amounts of Rent that have come due and owing to Plaintiff under the Lease, covering the period of September 23, 2022, through and including January 1, 2023, as follows: (i) $495,086.68 in fixed annual base rent; (ii) $13,205.54 in operating expenses; (iii) $74,263.00 in additional rent in lieu of percentage rent; (iv) $29,127.76 in administrative service charges; and (v) $12,714.75 in late charges for a total of $624,397.70, for Rent due and owing through January 1, 2023, plus Plaintiff's costs and expenses incurred under the Lease and Guaranty, including its legal fees, in an amount to be determined by the Court but estimated to be at least $25,000.00, together with interest, late charges and such additional Rent, administrative service charges and late charges that accrue under the Lease and Guaranty through the date of judgment.

42.    Plaintiff partially mitigated its damages by re-letting to StreetTrend, LLC ("StreetTrend"), the Premises together with the entire second floor of the Building and the use of a video wall purchased by Plaintiff (collectively, the "StreetTrend Premises"), subsequent to Tenant's breach of the Lease, pursuant to that certain Store Lease dated as of December 29, 2021 (the "StreetTrend Lease"); however, the StreetTrend Lease provides for free base rent from December 29, 2021 through January 26, 2022. Additionally, the StreetTrend Lease can be

terminated by Plaintiff for "Good Reason" (as defined in the StreetTrend Lease) or a default by StreetTrend.

43.     Pursuant to Section 1.04(A) of the Lease, Tenant was obligated to pay, and Plaintiff was entitled to receive, the sum of $123,771.67 per month in base rent payments for the months of October, 2022, November 2022, December, 2022 and January 2023, for total base rent in the amount of $495,086.68.

44.     Defendant is therefore liable for the difference in Rent payments between the amounts stipulated in the Lease and the amounts stipulated in the StreetTrend Lease attributable to the area of the Premises for the months of October 2022 through January 2023 (and such other amounts as will accrue through the Lease expiration date of March 31, 2023), in an amount to be determined at trial or the earlier disposition of this action.

## FIRST CLAIM FOR RELIEF
### (Breach of Guaranty Agreement)

45.     Plaintiff repeats and re-alleges all of the above allegations with the same force and effect as if fully set forth below.

46.     At all relevant times herein, Plaintiff, as landlord, and Tenant, as tenant, were parties to the Lease.

47.     Defendant, as the guarantor of Tenant's Lease obligations, made the Guaranty in favor of Landlord.

48.     Plaintiff complied with its obligations under the Lease and Guaranty, and has fully and faithfully performed all duties and obligations required under the Lease and Guaranty.

49.     Pursuant to the terms of the Guaranty, Defendant unconditionally and irrevocably guaranteed Tenant's prompt and complete payment, observance, fulfillment, and performance of all of Tenant's obligations under the Lease.

50.    In breach of the Defendant's obligations under the Guaranty, Defendant failed to pay to Plaintiff the base rent due and owing under the Guaranty, for the period covering October 1, 2022, through and including January 1, 2023, in the amount of $495,086.68.

51.    In breach of the Defendant's obligations under the Guaranty, Defendant further failed to pay to Plaintiff the additional rent due and owing under the Guaranty, for the period covering October 1, 2022, through and including January 1, 2023, in the amount of $129,311.02.

52.    Based upon the foregoing, and subject to Plaintiff's rights to amend its pleading to conform it to the proofs to account for all subsequently accruing Rent incurred under the Lease and Guaranty, all of which are expressly reserved, Plaintiff is entitled to the issuance and entry of a monetary judgment, in its favor and against Defendant, in the amount of $624,397.70 less the net rental proceeds allocable to the Premises received by Plaintiff in mitigated damages under the StreetTrend Lease, for a current total amount of $551,058.76, as of the date hereof, plus statutory interest, costs, and disbursements.

53.    Plaintiff reserves its right to seek an amendment to this Complaint to include all Rent and other charges due under the Lease and Guaranty through the date of judgment.

## SECOND CLAIM FOR RELIEF
### (Attorneys' Fees)

54.    Plaintiff repeats and re-alleges all of the above allegations with the same force and effect as if fully set forth below.

55.    Pursuant to Section 10.25 of the Lease, Tenant was liable to Landlord for the payment of all attorneys' fees and expenses incurred by Plaintiff as a result of Tenant's failure to comply with the express terms and conditions of the Lease.

56.    Pursuant to Section 3 of the Guaranty, Defendant is liable to Plaintiff for the payment of all costs and expenses, including attorneys' fees, incurred by Plaintiff as a result of

Tenant's failure to comply with the terms and conditions of the Lease, including any of such costs, expenses and attorneys' fees that would have accrued under the Lease but for Tenant's insolvency proceeding.

57.     Pursuant to Section 16 of the Guaranty, Defendant is liable to Plaintiff for the payment of all costs and expenses, including attorneys' fees incurred by Plaintiff in this case to enforce Defendant's obligations under the Guaranty.

58.     Plaintiff commenced the Second Action and this action against Defendant in order to enforce its rights and remedies under the Guaranty, including, but not limited to, its right to receive and recover all Rent due and owing under the Lease and Guaranty, and Plaintiff's costs and expenses, including attorneys' fees incurred by Plaintiff in this case to enforce Defendant's payment obligations under the Guaranty.

59.     Plaintiff was the prevailing party in the Second Action.

60.     Plaintiff anticipates that it will be the prevailing party in this action.

61.     Plaintiff has incurred, and will continue to incur, attorneys' fees and other expenses in connection with the commencement and prosecution of the Second Action and this action.

62.     Therefore, Defendant is liable to Plaintiff for attorneys' fees and expenses in an amount to be determined by the Court, but in an amount no less than $25,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that the Court grant judgment against Defendant as follows:

a.     On The First Claim For Relief, granting Plaintiff a money judgment against Defendant in the sum of $624,397.70, less the net rental proceeds allocable to the Premises received by Plaintiff in mitigated damages under the StreetTrend Lease for a current total amount of $551,058.76, as of the date hereof, with interest, and subject to Plaintiff's right to seek additional damages for all Rent and other charges due and owing under the Lease through and including the date of judgment;

b.     On the Second Claim For Relief, granting Plaintiff a money judgment for Plaintiff's costs and expenses, including attorneys' fees against Defendant in the sum of at least $25,000, with interest; and

c.     Granting Plaintiff such other and further relief as this Court deems just and proper.

Dated:    New York, New York        BELKIN BURDEN GOLDMAN, LLP
         January 6, 2023             *Attorneys for Plaintiff*
                               605 Fifth Property Owner, LLC
                               One Grand Central Place
                               60 East 42nd Street, 16th Floor
                               New York, New York 10165
                               (212) 867-4466

                     By:   _Jay B. Solomon_____
                           Jay B. Solomon, Esq.
                           Israel A. Katz, Esq.

IKATZ/12204.0007/4055903.1